| | |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CRIMINAL ACTION NO. 4:13-CR-209(1) |
| § | |
| MOISES CARRALERO § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Moises Carralero's ("Carralero") Emergency Application for Modification of Sentence (#117), wherein he requests that the court reduce the remainder of his sentence of imprisonment to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion, and after conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On April 15, 2013, a federal grand jury in the Eastern District of Texas returned an Indictment charging Carralero and a codefendant in Count I with Conspiracy to Possess With the Intent to Distribute and Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or 50 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). Following Carralero's arraignment on August 29, 2013, he was ordered released on bond with conditions. Carralero failed to appear for a motion hearing on April 10, 2014, and a warrant was issued for his arrest. On April 30, 2014, Carralero was found to have violated the conditions of pretrial release by testing positive for

methamphetamine. On August 26, 2014, Carralero pleaded guilty to the offense charged pursuant to a non-binding plea agreement. On February 19, 2015, the court sentenced Carralero to 200 months' imprisonment, followed by a 5-year term of supervised release. On August 5, 2015, Judge Richard Schell revoked Carralero's supervised release, which he was serving for a previous conviction (4:13-CR-222(1)) when he committed the offense in this case, and sentenced Carralero to 24 months' imprisonment to run concurrently with this court's sentence. Carralero is currently housed at the low security facility of the Federal Correctional Institution Yazoo City, located in Yazoo City, Mississippi ("FCI Yazoo City Low"). His projected release date is June 12, 2028.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582©, which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559©, for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582© by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at

3

*3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Carralero is foreclosed from obtaining relief because it does not appear that he has submitted a request for compassionate release to the warden of the facility where he is housed. Carralero does not claim to have submitted such a request to the warden. The Government states that as of August 14, 2020, the BOP denies receiving a request for compassionate release from Carralero. Probation also confirms that Carralero has not requested any administrative remedy through the BOP. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016)

("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Carralero requests. Moreover, even if Carralero had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (I) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

    A.    <u>Medical Conditions</u>

In the instant motion, Carralero contends that he is eligible for compassionate release due to his medical conditions, namely, borderline diabetes, liver disease, and a long history of heavy smoking. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Carralero's recent medical records, provided by the Government, do not indicate that he suffers from borderline diabetes or liver disease and make no reference to smoking. Rather, Carralero's records document that he suffers only from some digestive issues, including gastro-

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

esophageal reflux disease, for which he is prescribed several medications, and hemorrhoids, as well as vision and dental problems. According to his Presentence Investigation Report ("PSR"), prepared in 2014, Carralero informed Probation that he had a pinched nerve in his back, but he had not seen a doctor for the condition. Carralero made no mention of borderline diabetes, liver disease, or a long history of smoking.

On April 3, 2020, Carralero tested positive for COVID-19. Prior to testing positive, Carralero reported that he had a sore throat and a cough without any shortness of breath. His temperature was elevated, and Carralero was prescribed Tylenol, but no other medication. He was placed in isolation, and each day for 14 days after testing positive for COVID-19, Carralero responded to screening questions, repeatedly stating that he did not suffer from a cough or shortness of breath. Carralero's medical records confirm that he had an asymptomatic case of COVID-19, aside from a fever on three or four days. While Carralero now claims that COVID-19 "left him feverish, coughing, short of breath, and dizzy, with severe joint pains and headaches," such an assertion is refuted by his contemporaneous medical records. Even if he continued to experience some of these symptoms or had borderline diabetes or a liver condition, Carralero's medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care. According to Probation, Carralero has no medical restrictions and has recovered from COVID-19. Hence, Carralero has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

B.     Age

Carralero also bases his request for a reduction in his sentence on his age. The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (I) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, Carralero is 61 years of age, below the minimal threshold of 65 years. There is also no indication that he is experiencing serious deterioration in his physical or mental health. Moreover, as of the date of his motion, Carralero had served approximately 77 months of his 200-month sentence, less than the lesser of 10 years or 75 percent of his term of imprisonment.

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559©, for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(ii). Here, Carralero is only 61 years of age, which is less than the stated minimum age of 70. Accordingly, Carralero also does not meet the alternative requirements for age-related compassionate release stated in 18 U.S.C. § 3582(c)(1)(A)(ii).

C.   "Other" Reasons

Carralero's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through ©." U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-© warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Carralero for any "other" reason.  It is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, the defendant has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.  In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Carralero's situation.

Carralero maintains that if he contracts COVID-19 for a second time, it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Carralero expresses concern regarding the spread of COVID-19 among the prison population. Nevertheless, as of September 7, 2020, the figures available at www.bop.gov list 0 inmates and 4 staff members at FCI Yazoo City Low as having confirmed positive cases of COVID-19, 94 inmates and 9 staff members who have recovered, and 3 inmates who have succumbed to the disease. Indeed, according to Carralero's medical records, he tested positive for the disease, was placed in isolation, received treatment, and has now recovered from the virus. Thus, it appears that the facility where Carralero is housed is handling the outbreak appropriately and providing adequate medical care. Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus. *See, e.g., United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's

asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)).

Although Carralero expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Carralero, if he were to contract the virus and develop COVID-19 symptoms a second time, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Carralero has

failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served or modify his remaining term of imprisonment to supervised release with a condition of home confinement.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Carralero's current conviction stems from his participation in a drug-trafficking conspiracy involving the distribution of between 1.5 and 5 kilograms of methamphetamine. During a 2013 Drug Enforcement Administration investigation, Carralero, after providing an undercover officer a sample of .97 gram of methamphetamine "ice," offered to supply the officer 20 pounds of methamphetamine "ice" for $11,000.00 and 10 kilograms of cocaine for $27,000.00. On the date scheduled for the transaction, Carralero showed the officer 1 pound of methamphetamine and told him that 4 additional pounds were at Carralero's residence. On his way back to his residence, sheriff's officers attempted to conduct a traffic stop on Carralero; however, Carralero sped off and threw a container holding 382.4 grams of methamphetamine "ice" out the window of his vehicle. Officers finally apprehended Carralero after he wrecked his vehicle. Officers subsequently searched Carralero's residence, where they found 306.5 grams of methamphetamine "ice," drug ledgers, and a digital scale. They also discovered 1,647 grams of methamphetamine "ice" that Carralero had set aside to sell to the undercover officer, but which had been tossed over a fence in an attempt to hide evidence. After being charged with the present crime, Carralero failed to comply with the conditions of his pretrial release when he did not appear for a motion hearing and tested positive for methamphetamine use. His pretrial release was revoked, and he was detained pending trial.

Carralero is a career offender with an extensive criminal history, including prior convictions for delivery of marijuana, possession with intent to distribute cocaine, use of a communication facility in a felony drug violation, driving while license suspended, evading arrest, and conspiracy to possess with the intent to distribute 100 grams or more of heroin. He was on supervised release at the time of the instant offence. Carralero also has a long history of alcohol, marijuana, cocaine, and methamphetamine abuse dating from age 9. He began using cocaine at age 22 and continued using it on a daily basis until he was imprisoned at age 45, at which time he was consuming 2 to 3 grams per day. He began using methamphetamine after he was released from the BOP in 2012. In view of the nature and circumstances surrounding Carralero's conviction, his criminal history, and his history of poly-substance use, the court cannot conclude that Carralero would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,636 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR

2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United*

*States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Carralero's track record is similarly a poor one.

In short, Carralero has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III. Conclusion

Consistent with the foregoing analysis, Carralero's Emergency Application for Modification in Sentence (#117) is DENIED.

SIGNED at Beaumont, Texas, this 8th day of September, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE